# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 1, 2012

## JUSTIN DIANA v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. W11-00228      Lee V. Coffee, Judge**

**No. W2012-00998-CCA-R3-PC  - Filed April 17, 2013**

The petitioner, Justin Diana, pled guilty in the Shelby County Criminal Court to one count of attempted solicitation of sexual exploitation of a minor by electronic means and three counts of statutory rape.  He received a total effective sentence of four years.  Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel were ineffective and that his guilty pleas were not knowingly and voluntarily entered.  The post-conviction court denied the petition, and the petitioner appeals.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

James P. DeRossitt, IV, Memphis, Tennessee, for the appellant, Justin Diana.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On April 19, 2011, the petitioner pled guilty to attempted solicitation of sexual exploitation of a minor, a Class C felony, and to three counts of statutory rape, a Class E felony.  The plea agreement provided that the petitioner, as a standard, Range I offender, would receive concurrent sentences of four years for the Class C felony conviction and two years for each Class E felony conviction.  The parties stipulated to the following factual basis

for the pleas:

> [On] November 20th, 2010, officers responded to . . . 667 North
> Holmes here in Shelby County. They were attempting to locate
> a victim in this matter, [BB,[1]]. When the officers spoke with
> [BB they] noticed that she had slurred speech after speaking
> with her. She relayed to officers she'd been over at [the
> petitioner's] home along with two of her friends also who were
> 15 and 16 years of age.
>
> The [petitioner] had given them Xanax, alcohol to drink
> and had had sex with all three of these victims. In addition, . .
> . [the petitioner] took videos and cell phone pictures while this
> was happening, thus the solicitation of exploitation of a minor.

Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his counsel were ineffective. Specifically, he maintained that counsel should have pursued a motion to suppress evidence derived from an illegal search of his cellular telephone. He also complained that his guilty pleas were not knowingly and voluntarily entered because counsel did not explain that as a result of the guilty pleas, he would be required to remain on the sexual offender registry for life.

At the post-conviction hearing, the twenty-four-year-old petitioner testified that he had attended school through the tenth grade and that he had received a general equivalency diploma (GED). The petitioner acknowledged that as a result of his having sexual relations with three minor females, he was arrested and charged on November 20, 2010, with three counts of statutory rape, three counts of soliciting sexual exploitation of a minor by electronic means, three counts of contributing to the delinquency of a child, and three counts of especially aggravated sexual exploitation of a minor. When police arrived at his residence, two of the victims were in the petitioner's bed. Additionally, the petitioner had used his cellular telephone to record his sexual relations with at least one of the victims. Eventually, he pled guilty to one count of attempted solicitation of sexual exploitation of a minor and three counts of statutory rape.

The petitioner said that in general sessions court, he was represented by two attorneys. First, he was represented by privately retained counsel for approximately three weeks. Thereafter, the trial court appointed his first appointed counsel, who was a public defender.

---

[1]It is the policy of this court to refer to minor victims of sexual crimes by their initials.

The petitioner signed a "waiver by information"[2] in general sessions court. His case proceeded to criminal court where he was represented by his second appointed counsel and substitute counsel, both of whom were public defenders.

The petitioner said that he and first appointed counsel discussed the charges and sentences he was facing. The petitioner said that he was initially charged with "regular exploitation of a minor . . . but then my charges were amended to especially aggravated." He said that the amended charges were Class B felonies and that, if convicted, he faced a potential sentence of eight to thirty years, with one hundred percent of the sentence to be served in confinement. He acknowledged that the trial court could have ordered the sentences to be served consecutively.

The petitioner said that he and retained counsel discussed whether the evidence derived from his cellular telephone might be suppressed due to an illegal search. The petitioner explained:

> The cell phone was around my neck when I was placed under arrest, and I took my cell phone off my neck and set it on the livingroom [(sic)] table when they put me in handcuffs because I didn't want it to come to jail and somebody try to steal it from me. It was a brand new cell phone. Once I was placed under arrest, the officer picked my cell phone up; and for no reason at all, just started going through everything in my phone. And all of a sudden, he just went and looked; and he was like, "What is this?" And then more police officers arrived at the scene, and the case went from there.

The petitioner said that although he had given police consent to search his bedroom, the consent did not extend to the place where the cellular telephone was located. He said that retained counsel requested a preliminary hearing because of the suppression issue. After first appointed counsel was appointed, retained counsel wanted to speak with him. The petitioner did not know if they ever spoke. The petitioner told first appointed counsel that he and retained counsel had discussions about the suppression issue. The petitioner said that first appointed counsel disregarded his concerns and told the petitioner about a plea agreement involving a sentence of four years. The petitioner said first appointed counsel was not willing to discuss anything except the plea agreement. The petitioner said that he did not demand a motion to suppress hearing or a preliminary hearing because first appointed

---

[2]The petitioner agreed to waive his right to a preliminary hearing and agreed to allow the State to proceed by information.

counsel "basically made what I was saying like it was not important – like this was not going to prevail; that it was not an important issue; that we basically needed to disregard it because it was in my best interest to take the four years." First appointed counsel gave the petitioner the impression that he should plead guilty instead of risking a trial and a sentence of eight to thirty years at one hundred percent.

The petitioner acknowledged that first appointed counsel advised him that he would be required to register as a sexual offender. The petitioner maintained, however, that first appointed counsel told him that he could be removed from the registry in five or ten years. First appointed counsel did not inform him that the registry requirement was for life. The petitioner said if he had known of the lifetime requirement, he would not have signed the agreement.

The petitioner said that when his case was set in criminal court, he was assigned a new public defender, second appointed counsel. He said that he did not meet second appointed counsel until after his guilty plea. He stated that on his first day in criminal court, substitute counsel gave him a business card bearing second appointed counsel's name. Substitute counsel told him that they would proceed with the plea agreement negotiated by first appointed counsel. The petitioner did not discuss the sexual offender registry with substitute counsel. However, at the guilty plea hearing the trial court "mentioned the sex-offender registry implications." The petitioner said that he entered the guilty pleas believing he would be on the registry for five to ten years and could then petition to be removed from it. He said he "got sidetracked" during the guilty plea hearing after he noticed his mother crying, and he did not understand that he was going to be placed on the sexual offender registry for life.

The petitioner said that following the guilty plea hearing, he was sent for a psychosexual evaluation. At the sentencing hearing, at which he was represented by second appointed counsel, the trial court denied probation.

The petitioner acknowledged that if the post-conviction court granted him relief, he could be convicted at trial and potentially serve a longer sentence.

On cross-examination, the petitioner said that when the police came to his house, two minor females were in his bed. He conceded that he signed a consent to search his house. He denied confessing to police or saying that he would plead guilty.

The petitioner acknowledged that first appointed counsel informed him that he could be charged with offenses related to a fourth minor female victim from a separate incident and that if the petitioner accepted the plea agreement, the State would not prosecute him for that incident. The petitioner said that having the charge dismissed was a factor in his decision

to plead guilty. However, he again complained that he did not realize he would be unable to have his name removed from the sexual offender registry.

Initially, the petitioner maintained that he and substitute counsel never discussed the sexual offender registry. Nevertheless, he later said that he and substitute counsel "briefly discussed" the sexual offender registry but that she never told him that he would be placed on the registry for life. The petitioner acknowledged that the guilty plea form and the information charging him with the offenses provided that he would be required to register as a sexual offender.

The petitioner maintained that he wanted post-conviction relief because "these charges that make me have to register, they were obtained illegally. My civil rights were violated – my constitutional rights were violated. My due process was all violated."

Following the petitioner's testimony, the court advised the petitioner that under Tennessee Code Annotated section 40-39-207, "no sooner than ten years after the termination of your active supervision . . . you may apply to be discharged" from the sexual offender registry. The court asked the petitioner if, knowing he could petition for removal from the registry, he still wanted to pursue post-conviction relief. The petitioner said that he did.

First appointed counsel testified that he began representing the petitioner after retained counsel withdrew. The petitioner originally faced a sentence of at least eight years for Class B felony convictions involving each of three victims, with potential charges regarding a fourth victim. The petitioner was aware he would be placed on the sexual offender registry. The petitioner did not want to be on the registry, and they "talked about ways you can potentially get off the registry – things of that nature. The law is somewhat confusing."

The night before the preliminary hearing, first appointed counsel visited the petitioner in jail and informed him of the State's plea offer. First appointed counsel stated that it was the petitioner's decision to have a preliminary hearing or to accept the plea offer. First appointed counsel noted that the information provided that the petitioner would be subject to the sexual offender registry. The petitioner understood the registry requirement and wanted to plead guilty. First appointed counsel asserted that he would not have let the proceedings continue if the petitioner had expressed concerns regarding the registry.

On cross-examination, first appointed counsel stated he advised the petitioner that he had the option to accept the plea offer or to pursue a preliminary hearing. First appointed counsel did not advocate for one option over another. During discussions about the sexual offender registry, first appointed counsel told the petitioner that "there's a ten-year time period of whether or not you can get it removed. It wasn't part of our information. The

information reflected that he would be place[d] on the registry." First appointed counsel asserted that he did not promise the petitioner that he would be removed from the registry.

First appointed counsel said the petitioner was concerned about search and seizure issues after the waiver. First appointed counsel advised the petitioner that he had not yet entered a guilty plea and could still pursue a suppression motion in criminal court. First appointed counsel maintained, "I think, to this day, he has potential search and suppression issues he could pursue. . . . I mean, every hearing we have has search and suppression issues." First appointed counsel stated that even if the petitioner had successfully suppressed the evidence gathered from the cellular telephone, he still faced statutory rape charges regarding three or four victims. First appointed counsel did not encourage the petitioner to agree to be charged by information and forego the preliminary hearing, asserting that there was no incentive for him to encourage that result. First appointed counsel asserted that the petitioner made the decision to sign the "waiver by information."

Substitute counsel testified that cases were assigned in the public defender's officer on a rotational basis. When the trial court appointed counsel to represent the petitioner in criminal court, second appointed counsel "was next up on the information list . . . [but that substitute counsel] got the information because [second appointed counsel] was out; but [second appointed counsel] was technically his lawyer." Substitute counsel acknowledged that she handled the petitioner's waiver and the guilty pleas. Substitute counsel reviewed the information and the plea offer with the petitioner, specifically discussing the sexual offender registry requirement. The petitioner had believed he could be removed from the registry after ten years, but substitute counsel advised him that he could not be removed from the registry. She informed the petitioner that the plea agreement was not yet binding and that he could choose not to enter the guilty pleas. Nevertheless, the petitioner never discussed with her any suppression issues. The petitioner did not seem distracted or confused during the guilty plea.

Transcripts of the petitioner's guilty plea hearing and the sentencing hearing were submitted as exhibits to the hearing. Notably, the guilty plea hearing transcript reflects that the trial court asked the petitioner if he and substitute counsel had signed a waiver of indictment and presentment, and the petitioner said yes. The petitioner acknowledged that substitute counsel had reviewed and explained the waiver and the pleas to him and that he understood them. The petitioner said that he was pleading guilty freely and voluntarily, that he had made the decision to plead guilty, and that he was satisfied with his representation. The trial court advised the petitioner that because of his conviction for attempted solicitation of sexual exploitation of a minor, he was required to register as a sexual offender and to remain on the sexual offender registry for the rest of his life. The petitioner said that he understood the requirement. The petitioner told the court that he did not have any questions, and the trial court accepted the guilty pleas.

After hearing the proof and reviewing the exhibits, the post-conviction court accredited the testimonies of first appointed counsel and substitute counsel. The court observed that the petitioner gave inconsistent testimony regarding his understanding of the sexual offender registry. The court further noted that a transcript of the guilty plea hearing revealed that after the trial court advised the petitioner of the requirement that he remain on the sexual offender registry for life, the petitioner said he understood. Further, first appointed counsel and substitute counsel advised the petitioner about the sexual offender registry, and the petitioner nevertheless chose to plead guilty. The post-conviction court found that first appointed counsel "worked out an outstanding resolution of these charges." Therefore, the court found that the petitioner was properly advised of the consequences of his guilty pleas and knowingly and voluntarily chose to plead guilty.

The post-conviction court stated:

> I cannot believe that [the petitioner] is dissatisfied with the result that he got on the case in which, when the police arrived, he had two underage girls in his bed; got statements from these girls; found drugs in a bedroom; made statements of admission to the police that he did it; and, in fact, had some of this videotape. And he now says, "Well, I think some of this should have been suppressed."

The court stated that after the petitioner and first appointed counsel discussed suppression issues, the petitioner decided to waive those issues and enter guilty pleas. Accordingly, the post-conviction court ruled that the petitioner failed to prove ineffective assistance of counsel or that his guilty pleas were not knowingly and voluntarily entered. On appeal, the petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to

substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the

consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Regarding the ineffective assistance claims, the petitioner complains that his counsel failed to pursue a motion to suppress evidence derived from the illegal search of his cellular telephone. He maintains that of the three attorneys appointed to represent him, none were present at his guilty plea hearing; instead, a fourth attorney, who "provided only the most cursory legal advice," was present at the plea hearing. The petitioner also asserts that his guilty pleas were not knowingly and voluntarily entered because counsel did not explain that as a result of the guilty pleas, he would be required to register as a sexual offender for life. In response, the State contends that despite the petitioner's complaints, he suffered no prejudice by having multiple attorneys, that he was at all times represented by counsel, and that counsel were not ineffective.

The post-conviction court specifically accredited the testimony of substitute counsel and first appointed counsel and discredited the testimony of the petitioner, finding the petitioner to be "wholly incredible." The post-conviction court found that counsel advised the petitioner that if he pled guilty, he would remain on the sexual offender registry for life. Additionally, the trial court explicitly informed the petitioner that he was subject to being on the sexual offender registry for life, and the petitioner told the court that he understood the requirement.

First appointed counsel testified that he and the petitioner discussed filing a motion to suppress. First appointed counsel informed the petitioner that he could pursue suppression and have a preliminary hearing or waive by information and have his case transferred to criminal court but did not encourage the petitioner to choose one option over the other. In

general sessions court, first appointed counsel advised the petitioner that the plea agreement was not yet binding and that he could withdraw his agreement and pursue suppression at any time. Regardless, the petitioner expressed his desire to accept the plea offer. After the case was transferred to criminal court, substitute counsel reiterated first appointed counsel's statement that the petitioner was not yet bound to the plea agreement. The petitioner never informed substitute counsel or the trial court that he was concerned about suppression issues. Additionally, the trial court gave the petitioner an opportunity to express dissatisfaction with his representation, but the petitioner said that he was satisfied with counsel's performance. Moreover, the petitioner acknowledged that if he had gone to trial, he faced the risk of a considerably longer sentence and additional charges relating to another victim. The post-conviction court found that the petitioner's counsel were not ineffective and that the petitioner knowingly and voluntarily entered his guilty pleas. We agree with the post-conviction court.

## III. Conclusion

In sum, we conclude that the petitioner did not prove his post-conviction claims by clear and convincing evidence. Accordingly, the judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE